IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIO LOPEZ,<br><br>                    Plaintiff,<br><br>       v.<br><br>MARTIN O'MALLEY, Commissioner of<br>Social Security,<br><br>                    Defendant. | CIV. NO. 23-00317 JMS-WRP<br><br>ORDER REVERSING THE ALJ'S<br>DECISION AND REMANDING<br>FOR FURTHER PROCEEDINGS |

## ORDER REVERSING THE ALJ'S DECISION AND REMANDING FOR FURTHER PROCEEDINGS

## I. INTRODUCTION

Mario Lopez ("Plaintiff" or "Claimant") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security, Martin O'Malley ("Defendant" or "Commissioner").[1]  ECF No. 1.  The Commissioner adopted Administrative Law Judge David Romeo's ("ALJ") November 14, 2022 decision finding Plaintiff not disabled under § 216(i) and § 223(d) of the Social Security Act ("ALJ's Decision").  Plaintiff argues the ALJ committed legal error by (1) failing to offer an evaluation of Lopez's symptom

---

[1]  Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (providing that action survives regardless of any change in the person occupying the office of Commission of Social Security).

testimony in finding a residual functional capacity ("RFC") to perform light work, including the failure to discuss Plaintiff's activities of daily living; and (2) finding an RFC not based on substantial evidence by (a) determining that Claimant could lift and carry up to 20 pounds, and (b) failing to accommodate Plaintiff's gastrointestinal issues. *See* ECF No. 13 at PageID.3121–3137.

The court finds that the ALJ erred in failing to discuss Plaintiff's activities of daily living when determining the RFC, and that the RFC is not based on substantial evidence as to at least Plaintiff's gastrointestinal symptoms. Accordingly, the court REVERSES the Commissioner's final decision and REMANDS for further proceedings.

## II. <u>BACKGROUND</u>

### A.   The Social Security Disability Determination Framework and the ALJ's Findings and Decision

Plaintiff, who alleges disability as of February 8, 2014, applied for Social Security Disability Insurance ("SSDI") benefits on March 17, 2021, and applied for Supplemental Security Income ("SSI") on April 1, 2021. Administrative Record ("AR")[2] 295, 308.  His claim for Title II Social Security Disability Benefits was denied and his claim for Supplemental Security Income

---

[2]   The AR is numbered sequentially from pages 1 to 3054 and is available at ECF Nos. 9 through 9-34.

was approved by the ALJ on November 14, 2022.  AR 35–48.  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017.  AR 48.  Thus, the relevant period for the purposes of this appeal is between February 8, 2014, when Plaintiff claimed he became disabled, and September 30, 2017, the date last insured.  If Plaintiff became disabled before his date last insured, he would be entitled to SSDI benefits in addition to SSI benefits.

The Social Security Administration has established a five-step sequential analysis to assess disability,[3] which asks:

> (1)     Has the claimant been engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> (2)     Has the claimant's alleged impairment been sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.
>
> (3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

---

[3]  A claimant is "disabled" for purposes of the Social Security Act if (a) he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and (b) the impairment renders him incapable of performing the work that he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(1)(A) and (d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

> (4)    Does the claimant possess the residual functional capacity[4] to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> (5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520 (explaining the five-step sequential evaluation process used to decide whether a claimant is disabled), 416.920 (same)),[5] *see also Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (stating that the 2017 revised Social Security regulations do not alter the familiar "five-step sequential evaluation process," and that the purpose of 20 C.F.R. § 404.1520(a)(1) is to explain that process).  For Steps 1 through 4, the burden of proof is on the claimant, and if the claimant reaches Step 5, the burden shifts to the Commissioner.  *Tackett*, 180 F.3d at 1098.

---

[4]  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citing 20 C.F.R. § 416.920(e)).  A plaintiff's residual functional capacity is "the most you can still do despite your limitations."  20 C.F.R. § 416.945(a)(1).

[5]  The five-step process for finding a claimant disabled for SSDI claims under 20 C.F.R. § 404.1520 is identical to that for SSI claims under 20 C.F.R. § 416.920.

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 18, 2014, the alleged onset date.  AR 41 (citing 20 C.F.R. § 404.1571 et seq. and 416.971 et seq.).

The ALJ then found at Step 2 that Plaintiff had the following severe impairments: bilateral shoulder impairment; gastroparesis; obesity; peripheral neuropathy; hypertension; hernias; and chronic kidney disease.  *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).  He found that Plaintiff had "a variety of other symptoms and complaints" including "depression, somatic symptom disorder, and diabetic retinopathy" but that these conditions did not constitute severe impairments.  *Id.*  Finally, the ALJ credited the determinations of State agency consultants that Plaintiff has only mild limitations from mental impairments and determined that Plaintiff's mental impairments were "nonsevere."  AR 41–42 (citing 20 C.F.R. §§ 414.1520a(d)(1) and 416.920a(d)(1)).

At Step 3, the ALJ found that, since February 18, 2014, Plaintiff did not have an impairment or combination of impairments that meets or is medically equal to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 42 (citing 20 C.F.R §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  The ALJ evaluated listings in sections 1.00 (Musculoskeletal Disorders), 5.00 (Digestive Disorders), and 14.00

(Immune System Disorders), but found that Plaintiff did not have the criteria to meet any of the listings.  *Id.*

> Between Steps 3 and 4, the ALJ assessed Plaintiff's RFC.  He found that, since February 18, 2014, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  *Id.*  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

> The ALJ determined that Plaintiff could perform light work except:

> he could occasionally perform posturals; he could not climb ropes, ladders or scaffolds; he could perform frequent reaching but no overhead reaching with both upper extremities; he could have no more than occasional exposure to excessive vibration, heights, and hazards; he requires ready access to a restroom, but the need to use the restroom can be accommodated by 15-minute morning and afternoon breaks and the 30-minute lunch period.

AR 42.

> At Step 4, the ALJ determined that, as of February 18, 2014, Plaintiff "is unable to perform past relevant work as actually or generally performed."  AR 46.

> At Step 5, the ALJ found that prior to March 23, 2021, the date Plaintiff's age category changed, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed (given his age, education, work experience, and RFC).  AR 47 (citing 20 C.F.R. §§ 404.1569,

6

404.1569a, 416.969, and 416.969a).  The vocational expert testified that given

Plaintiff's limitations, he would have been able to perform the requirements of

occupations such as Dispatcher, Furniture Rental Consultant, and Information

Clerk.  *Id*.  Based on the vocational expert's testimony, the ALJ found Plaintiff

"not disabled."  AR 47–48.

## B.    Procedural Background

On November 14, 2022, the ALJ issued his decision finding Plaintiff

not disabled as of September 30, 2017.  AR 35–57.  This denial became final when

the Appeals Council denied Plaintiff's request for review on March 24, 2023.  AR

8.  Plaintiff brought this action for judicial review on August 1, 2023.  ECF No. 1.

Plaintiff filed his Opening Brief on November 30, 2023.  ECF No. 13.

Defendant filed an Answering Brief on December 21, 2023.  ECF No. 15.  Plaintiff

filed his Reply Brief on January 12, 2024.  ECF No. 16.  The court held a hearing

on March 18, 2024.

## III.  <u>STANDARD OF REVIEW</u>

Congress has provided a limited scope for judicial review of the

Commissioner's decision to deny benefits under the Social Security Act.  *See* 42

U.S.C. § 405(g); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

1098 (9th Cir. 2014) ("For highly fact-intensive individualized determinations like

a claimant's entitlement to disability benefits, Congress places a premium upon

agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") (internal quotation and citation omitted).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). First, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation and citation omitted). And, third, even where the ALJ commits legal error, courts uphold the ALJ's decision if that error is harmless. *Brown-Hunter*, 806 F.3d at 492. An error is harmless if it is "inconsequential to the ultimate nondisability determination" or if "despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1099).

## IV. <u>DISCUSSION</u>

This case concerns whether the ALJ sufficiently considered Plaintiff's testimony of shoulder pain and severe gastrointestinal problems in assessing the RFC.  Because it is dispositive, the court addresses the ALJ's failure to adequately consider and discuss Plaintiff's gastrointestinal issues as the basis for remand.

### A.    **Standards for Credibility Determination**

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible."  *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal quotation marks omitted)).  "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms."  *Id.* (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can 'reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so.'"  *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir.

9

2022) (quoting *Garrison*, 759 F.3d at 1014–15).  "[A]n ALJ may not 'reject a

claimant's subjective complaints based solely on a lack of medical evidence to

fully corroborate the alleged severity of pain.'"  *Id.* at 494–95 (quoting *Burch v.

Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  The heightened standard does not

apply when there is affirmative evidence of malingering.  *Id.* at 497.

       Furthermore, "[a] finding that a claimant's testimony is not credible

'must be sufficiently specific to allow a reviewing court to conclude the

adjudicator rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit a claimant's testimony regarding pain."  *Brown-Hunter*, 806

F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)

(citation and internal quotation marks omitted)).  In fact, "[g]eneral findings are

insufficient; rather, the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints."  *Id.* (quoting *Reddick v. Chater*,

157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted));

*see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ

must specifically identify the testimony she or he finds not to be credible and must

explain what evidence undermines the testimony."); *cf. Johns v. Berryhill,* 2019

WL 1453482, at *1 (D. Haw. Apr. 2, 2019) (reversing and remanding

Commissioner's decision because ALJ failed to properly "specifically identify"

and discuss Plaintiff's pain and symptom testimony in rejecting her testimony and finding her not disabled).

## B.   The ALJ Erred in Failing to Discuss Plaintiff's Activities of Daily Living

At step one of the two-step *Smith* credibility analysis, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  AR 43.  At step two, however, he found that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported for the reasons explained in this opinion."  *Id.*  Plaintiff argues that the ALJ was required to discuss the evidence Plaintiff provided in his testimony and his Function Reports[6] regarding his activities of daily living and symptoms.  ECF No. 13 at PageID.3127–3128. Plaintiff is correct—in this case, Social Security regulations require the ALJ to consider and discuss Plaintiff's "daily activities" and the duration, frequency, and intensity of other symptoms in evaluating non-medical evidence for the intensity, persistence, and limiting effects of his symptoms.[7]

_____

[6]  A Function Report is a form submitted by a disability claimant to assist the Social Security Administration in making a decision on his disability claim, in which the claimant describes how their illnesses, injuries, or conditions limit their activities.  *See* Soc Sec. Admin., Form SSA-3373-BK, "Function Report – Adult" at 1 (2024), https://www.ssa.gov/forms/ssa-3373-bk.pdf [https://perma.cc/W98W-GJTL]; AR 373.

[7]  For ease of reference, this Order refers to evidence relating to Plaintiff's daily activities and the duration, frequency, and intensity of symptoms as simply "daily activities."

11

Plaintiff testified extensively to the limitations that his uncontrollable diarrhea exerted on his daily activities, both at the hearing and in his Function Reports.  For example, he testified that throughout 2015–2017, after the removal of his gallbladder in 2015, he experienced symptoms where his stomach would not empty out, and he had sharp pain and nausea after he ate.  AR 16, 68, 78–79.  These were diagnosed as gastroparesis after a gastric emptying study revealed "gastroparesis, without significant gastric emptying" in October 2016.  AR 684, 783.  Plaintiff testified that he can go two or three days without a bowel movement, but when he does have one, it is a "sudden attack" and he has to get to the restroom immediately.  AR 68.  He describes incidents where he soiled himself if he had an attack while on a walk or driving, and the possibility of not being able to reach a restroom causes him anxiety.  AR 68–69.  As another example, in his May 17, 2021 Function Report, Plaintiff states that "sometimes the [urge] to have a bowel movement comes and [is immediate] and can have an unwanted accident."  AR 373.  And in an August 29, 2021 Function Report, he states that "I am unable to control my [bowel] movement when gastroparesis attacks.  [Because] of this I cannot guarantee I can be somewhere at specific times."  AR 412.  In other words, "being out in the street has caused me to poop in my pants."  AR 405.

Social Security Ruling ("SSR") 16-3p provides guidance on the ALJ's evaluation of this evidence.[8]  Soc. Sec. Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166-01 ("SSR 16-3p").  It instructs that if the ALJ "cannot make . . . a disability determination or decision that is fully favorable based solely on objective medical evidence," he must "carefully consider other evidence in the record," including "statements from the individual."  *Id.*  The ALJ should employ a list of factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) to consider "other evidence in the record."  *Id.*  SSR 16-3p lists these factors as follows:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

---

[8]  "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases."  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation omitted).

SSR 16-3p.

SSR 16-3p then requires the ALJ, after considering other evidence in the record, to discuss the factors "pertinent to the evidence of record":

> We will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms. *If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case. We will discuss the factors pertinent to the evidence of record.*

*Id.* (emphasis added). This requires the ALJ to *consider* certain other evidence relating to symptom assessment, and then requires that ALJ to *discuss* factors that are pertinent to the evidence.

Thus, given that the ALJ concluded that Plaintiff's "statements covering the intensity, persistence and limiting effects of the symptoms were not fully supported for the reasons stated in this decision," and given that there was evidence of Plaintiff's uncontrollable diarrhea in the record (which pertains to Plaintiff's "daily activities" and "location, duration, frequency, and intensity of pain or other symptoms"), SSR 16-3p requires the ALJ to consider that evidence and discuss it.[9] *Id.*; *see, e.g.*, *Reed v. Comm'r of Soc. Sec. Admin.*, 2022 WL

---

[9] SSR 16-3p superseded SSR 96-7p (S.S.A. July 12, 1996). The Social Security Administration rescinded SSR 96-7p in order to eliminate the use of the term "credibility," clarifying that the evaluation of symptom testimony is not "an examination of an individual's character." SSR 16-3p ("Purpose"). SSR 16-3p, effective March 28, 2016, did not change the substance of the regulations governing an ALJ's evaluation of symptom evidence, 20 C.F.R.

(continued . . .)

4396261, at *5 (D. Ariz. Sept. 23, 2022) ("When the medical record does not

support a favorable decision, [SSR 16-3p] provides the ALJ must consider all other

evidence and discuss all factors pertinent to the entire record."); *Sofia D. v.*

*Kijakazi*, 2022 WL 768667, at *11–12 (N.D.N.Y. Mar. 14, 2022) ("To the extent

that Plaintiff has presented evidence that the death of her husband was a factor that

precipitated and aggravated her symptoms, the ALJ was required both to consider

and to discuss that factor" under SSR 16-3p); *Hunt v. Kijakazi*, 2023 WL 6064858,

---

§§ 404.1529 and 416.929, which state that the ALJ "will consider" seven factors relevant to claimants' symptoms including "daily activities." 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). But SSR 16-3p does make a subtle change—it requires ALJs to not only "consider" the regulatory factors, but to "discuss" the factors that are relevant to the claimant's symptoms and "pertinent to the evidence of record." In contrast, SSR 96-7p instructed an ALJ to "evaluate" the evidence and "draw appropriate inferences and conclusions about the credibility of the individual," but did not impose any particular requirements for the ALJ's *discussion* of credibility. *Compare* SSR 16-3p *with* SSR 96-7p. Given this change, reliance on cases predating the effective date of SSR 16-3p may be of limited value.

    This is not to say that SSR 16-3p requires a formalistic discussion of every regulatory factor—an ALJ need only discuss the factors "relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms" and "pertinent to the evidence of record." *See, e.g.*, *Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018) ("[T]he ALJ is not required to make an express statement that she considered all of [the regulatory factors]."); *White v. Comm'r of Soc. Sec.*, 2023 WL 3977506, at *6 (E.D. Cal. June 13, 2023) (holding that SSR 16-3p does not require the ALJ to discuss each of the regulatory factors expressly, only those "that are relevant to assessing the intensity, persistence, and limiting effects of the claimant's symptoms.") (brackets omitted).

    Here, Plaintiff's daily activities were extremely restricted as a result of his uncontrollable diarrhea—he testified that he rarely left the house because he was afraid of having an attack and not being able to get to a restroom. AR 69–70, 376–77. This evidence has clear relevance to the RFC assessment—the vocational expert testified that if someone with Plaintiff's limitations required even two additional five-minute breaks in a day, he would be unemployable. AR 85. As set forth later, because Plaintiff's activities of daily living were relevant to assessing the severity of his gastrointestinal symptoms, the ALJ's failure to discuss or even mention them is error.

at *7 n.9 (E.D. Mo. Sept. 18, 2023) (stating that "SSR 16-3p requires the ALJ to consider and discuss only those factors that are relevant to the assessment").

Considering the ALJ's Decision as a whole, there is no indication that he considered Plaintiff's daily activities—or, indeed, much of his symptom testimony—in making his RFC determination. The ALJ summarized Plaintiff's testimony in one sentence as follows: "[T]he claimant reported that he has gastrointestinal issues that cause pain and frequent bathroom use." AR 43. He did not credit Plaintiff's testimony regarding *uncontrollable* diarrhea related to his gastroparesis. *See, e.g.*, AR 68 (testifying that "it's kind of like . . . a diarrhea. It's . . . a sudden attack and . . . it doesn't give me heads up."). And consequently, the ALJ did not integrate unscheduled restroom breaks or time off-task into the RFC. There is no reference in the Decision to Plaintiff's daily activities, including how Plaintiff's diarrhea prevented him from leaving his house and limited his leisure activities to reading and television. AR 70, 376–77. This is error. Upon remand, the ALJ must consider and discuss Plaintiff's daily activities and symptom testimony as to the severity and limiting effects of his gastroparesis.

## C.   The ALJ's RFC Does Not Account for Plaintiff's Gastrointestinal Issues and Is Therefore Not Based on Substantial Evidence

The court reviews for substantial evidence the ALJ's RFC finding that includes the requirement for Plaintiff to have "ready access to a restroom, but the need to use the restroom can be accommodated by 15-minute morning and

afternoon breaks and the 30-minute lunch period," AR 42.  *See, e.g.*, *Brown-Hunter*, 806 F.3d at 492.

The ALJ concluded that the "record reflects that [Plaintiff's] symptoms were infrequent or otherwise controlled and would not have interfered with work at the above residual functional capacity."  *Id.* at 44.  The ALJ cited various medical findings, such as the presence of diverticulitis, a normal colonoscopy, normal gastric emptying in June 2016 and a November 2016 "gastric emptying study showing gastroparesis without significant gastric emptying."  *Id.* But the ALJ fails to tie any of these findings to Plaintiff's reported stomach issues, including unannounced episodes of diarrhea.

The ALJ then cites to a number of reports as evidence that "the record reflects only mild discomfort from a digestive impairment."  AR 45.  First, he cites a March 2017 report by Dr. Daryle Fujiwara which states that Plaintiff's abdomen was soft, without tenderness, guarding, or rebound, and that there was no "costovertebral angle tenderness or inguinal adenopathy."[10]  *Id.*  at 45.  It is not

---

[10]  As Plaintiff points out, ECF No. 13 at PageID.3136, an inguinal adenopathy is swollen lymph nodes in the groin and is not related to gastroparesis.  *Inguinal Lymph Node*, Cleveland Clinic, https://my.clevelandclinic.org/health/body/23218-inguinal-lymph-node [https://perma.cc/69R2-EQ6Z].  Costovertebral angle tenderness is a physical examination maneuver used to differentiate renal pathology and is not related to gastroparesis.  *See* Fukaguchi et al. *The Diagnostic Accuracy of Costovertebral Angle Tenderness in the Emergency Department*, 78 Annals of Emergency Medicine at S151 (October 2021) ("Costovertebral angle tenderness (CVAT) is a widely used physical examination maneuver to differentiate renal pathology, such as pyelonephritis and ureteral stones.").

clear why the ALJ cited these observations because Dr. Fujiwara did not relate them to gastroparesis in any way, nor conclude based upon them that Plaintiff's gastroparesis symptoms were well-controlled or caused only mild discomfort.  To the contrary, Dr. Fujiwara's diagnosis was "gastroparesis secondary to diabetes and chronic narcotic use.  Mild to moderate in severity."  AR 679.

Next, the ALJ stated that, in May 2017, examination revealed a "soft abdomen with normal bowel sounds" and, in February 2018, examination revealed "only mild left quadrant tenderness, with no guarding or rebound."  AR 45.  But these reports do not conclude that Plaintiff was not suffering from gastroparesis. Nor is there any evidence that a patient with gastroparesis would likely have a swollen, painful abdomen whenever that patient is examined by a doctor.  Indeed, the Mayo Clinic states that "[m]any people with gastroparesis don't have any noticeable signs or symptoms."[11]  Given that Plaintiff had been diagnosed with "mild to moderate" gastroparesis using a gastric emptying study,[12] a soft abdomen during three subsequent examinations does not contradict Plaintiff's testimony that

---

[11]  *Gastroparesis*, Mayo Clinic, https://my.clevelandclinic.org/health/body/23218-inguinal-lymph-node [https://perma.cc/UKX4-AAKP].

[12]  A gastric emptying study is a recognized diagnostic test for gastroparesis.  *Diagnosis of Gastroparesis,* National Institute of Diabetes and Digestive and Kidney Diseases, https://www.niddk.nih.gov/health-information/digestive-diseases/gastroparesis/diagnosis #:%7E:text=Doctors%20use%20lab%20tests%2C%20upper,its%20contents%20to%20diagnose %20gastroparesis [https://perma.cc/3JUQ-C8AB].

he had gastroparesis, which led to episodes of uncontrollable diarrhea every two to three days.

What's more, the ALJ did not take Plaintiff's uncontrollable diarrhea symptoms into account in his hypotheticals to the vocational expert.  In his first hypothetical, the ALJ proposed that "the need to use the restroom can be accommodated by the 15-minute morning and afternoon breaks, and the 30-minute lunch period, and over the course of the day, two additional five-minute restroom breaks."  AR 85.  The vocational expert responded that this hypothetical individual could not perform any past work.  *Id.*  The ALJ then asked the vocational expert the same hypothetical "strik[ing] the two additional five-minute restroom breaks," such that "the need to use the restroom can be accommodated by the 15-minute morning and afternoon breaks, and the 30-minute lunch period."  The vocational expert responded that there would be work available to the individual.  AR 86.

The Commissioner argues that the ALJ's RFC—which provided Plaintiff with "ready access to a restroom" by providing 15-minute breaks in the morning and afternoon, plus a lunch break—adequately accommodates Plaintiff's gastroparesis symptoms because "[n]othing in the record supports Plaintiff's theory that he would be unable to take those breaks on an as-needed basis . . . ."  ECF No. 15 at PageID.3147.  This is incorrect.  Breaks that are taken as-needed, and on an unscheduled basis, are a different—and significantly more limiting—restriction on

Plaintiff's ability to work than "two 15-minute breaks in the morning and afternoon."  Scheduled breaks do not reflect any accommodation for uncontrolled diarrhea.  If the ALJ intended to properly address attacks of uncontrolled diarrhea, even if they occurred every 2–3 days, he would have needed to pose hypotheticals that included unscheduled breaks.[13]  *See Tackett*, 180 F.3d at 1098 (noting that the Commissioner has the burden of proof at Step 5).  Plaintiff correctly points out that unscheduled breaks appear to be inconsistent with customer-facing roles such as Furniture Rental Sales Consultant, or roles that require uninterrupted workflow such as Dispatcher.  ECF No. 16 at PageID.3160–3161.

Although the vocational expert did not testify to a hypothetical requiring unscheduled breaks, other cases suggest that the need for unscheduled breaks may well have precluded the possibility of employment.  *See, e.g.*, *Sprague v. Colvin*, 2014 WL 413536, at *6 (W.D. Mo. Feb. 4, 2014) (vocational expert opining that a hypothetical person who needed two unscheduled breaks throughout the day for ten to 15 minutes at a time likely could not work due to the unscheduled nature of the breaks); *Nathan S. v. Saul*, 2020 WL 1916175, at *10 (E.D. Wash. Jan. 21, 2020) (vocational expert testifying that the need for two

---

[13]  Plaintiff also argues that the ALJ erred in failing to incorporate time off-task into the hypotheticals.  ECF No. 13 at PageID. 3134–3137.  The record does not indicate how long Plaintiff's diarrhea attacks last, so it is not possible to determine whether an attack could be accommodated by an unscheduled 15-minute break.  Because it is already clear that the RFC does not account for the uncontrolled nature of the diarrhea symptoms, the court need not reach this argument.

unscheduled twenty-minute breaks per day would render a person with claimant's limitations not competitively employable).  Thus, the Commissioner's argument that the ALJ did in fact sufficiently incorporate Plaintiff's gastroparesis symptoms into the RFC is incorrect.

Because substantial evidence does not support the RFC, the determination at Step 5 that there were other jobs in the economy that Plaintiff could do, and the consequent finding that Plaintiff was not disabled on the date last insured, are also not supported by substantial evidence.  Remand is required.[14]

///

///

///

///

///

///

///

---

[14]  The Commissioner did not argue that this error was harmless, but nonetheless it was not.  "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation marks and citation omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).  In making this assessment, the court "look[s] at the record as a whole to determine whether the error alters the outcome of the case."  *Id.*  Here, the failure to take uncontrolled diarrhea into account in the RFC likely "alter[ed] the outcome of the case"—as explained above, accommodations such as extra five-minute breaks or unscheduled restroom breaks could have led the vocational expert to testify that someone with Plaintiff's limitations was not employable, which would have supported a finding that Plaintiff was disabled as of the date last insured.

# V.  <u>CONCLUSION</u>

For the foregoing reasons, the court REVERSES the ALJ's Decision

and REMANDS this action to the ALJ for further proceedings consistent with this

Order.  The Clerk of Court is instructed to close the case file.

IT IS SO ORDERED.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

DATED: Honolulu, Hawaii, April 9, 2024.

*Lopez v. O'Malley*, Civ. No. 23-00317 JMS-WRP, Order Reversing the ALJ's Decision and Remanding for Further Proceedings